Mark A. Nickel (14082)
Sara E. Pendleton (14008)
**GORDON REES SCULLY MANSUKHANI, LLP**
15 W South Temple St., Suite 1600
Salt Lake City, UT 84101
(801) 204-9989
mnickel@grsm.com
spendleton@grsm.com

*Attorneys for Defendant Skullcandy, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| JULIE JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKULLCANDY, INC.,<br><br>Defendant. | **MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00184<br><br>Magistrate Judge Jared C. Bennett |

Defendant Skullcandy, Inc. ("Skullcandy"), by and through undersigned counsel, pursuant to Fed R. Civ. P. 12(b)(1) and 12(b)(6), hereby respectfully moves this Honorable Court for an order dismissing each of Plaintiff's claims.

Plaintiff's Complaint [ECF 2] is procedurally and substantively deficient. First, Plaintiff lacks standing because she has not alleged concrete and particularized harm sufficient to satisfy Article III's "irreducible constitutional minimum of standing." Second, Plaintiff failed to state a plausible claim for relief under the California Invasion of Privacy Act ("CIPA"). Indeed, Plaintiff's admitted consent to Skullcandy's use of the information she transmitted is dispositive of her claims; Plaintiff did not allege that the information she transmitted to Skullcandy was intercepted "while" in transit; and Skullcandy was the intended recipient of the information Plaintiff

communicated (and a party cannot eavesdrop on itself). Third, Plaintiff's CIPA claims are impermissibly vague pursuant to Fed. R. Civ. P. 8, because Plaintiff improperly seeks to apply CIPA to extraterritorial conduct.

## STATEMENT OF FACTS

Plaintiff brings this action in Utah under a California Penal Statue but does not allege where she accessed the Website, the device she used to access the Website, what activity she engaged in on the Website, or any concrete damages she incurred as a result of her interaction with the Website. *See* Complaint, ¶¶ 116-122. She alleges violations of California Penal Code §§ 631 and 632, which criminalize wiretapping and eavesdropping on confidential communication. But, contrary to the protective policy of the statutes, Plaintiff does not allege that Skullcandy eavesdropped or wiretapped the relevant communication. In fact, the alleged activities—whether true or not—were undertaken by Google and Meta, according to Plaintiff.

Plaintiff alleges that she is a California resident whose information was sent to Google and Meta through software installed on the Website. *See* Complaint, ¶¶ 9, 119-124. Specifically, Plaintiff claims that Skullcandy installed software, created by Meta and Google, on the Website to identify visitors (the "Software"). *Id*. Plaintiff also alleges that she has maintained an account with Facebook (Meta) since 2007 and Google since 2021, using her real, personally identifiable information. *See* Complaint, ¶¶ 116-118. As asserted by Plaintiff, the Software works by matching data about an individual who visits Skullcandy's Website and who is also logged onto Facebook, to reconstruct the individual's identity. *See* Complaint, ¶¶ 70-75.

Skullcandy, on the other hand, is an online retailer that sells headphones and audio equipment. Skullcandy operates https://www.skullcandy.com and its accompanying subpages (the "Website") to market and sell its products to potential buyers.

The Website at issue includes a prominently placed, written "Terms of Service" that apply to any use of Skullcandy's Website. *See* Terms of Service, attached hereto as "Exhibit A"; *see* Complaint, ¶¶ 108-110. The Website also includes a prominently placed, written "Privacy Policy," which includes a cookie policy as alleged by Plaintiff in the Complaint. *See* Privacy Policy, attached hereto as "Exhibit B"; *see also* Complaint, ¶¶ 106-111. Any individual, including Plaintiff, who visits the Website is faced with access to both the Terms of Service and the Privacy Policy.

The Privacy Policy communicates that "Skullcandy, as well as certain third-party analytics and other service providers, may use a variety of technologies that automatically or passively collect information about how you use the [Website] …" Privacy Policy (Exhibit B), p.3. Skullcandy's Privacy Policy specifically articulates that third party action—including those of Meta and Google—are covered under the relevant policies of those third parties: "You may also choose to participate in a third party application or feature (such as one of our Facebook applications or a similar application or feature on a third-party website) through which you allow us to collect and share (or the third party to share) information about you, including Personal Information." Privacy Policy (Exhibit B), p.3. Further, the Privacy Policy expressly informs Website visitors that cookies are enabled on the Website, which allows Skullcandy to track activity, preference, user experience data, remember usernames and passwords, and other identifying information. *See* Privacy Policy, "Use of cookies," pp.5-7.

## LEGAL ARGUMENT

Plaintiff's Complaint should be dismissed for any one or more of the following reasons: (1) Plaintiff lacks standing because she has not alleged concrete and particularized harm; (2) Plaintiff fails to state a claim under CIPA, stretching the original intent of California's wiretapping

and eavesdropping laws beyond recognition; or (3) Plaintiff's CIPA claims are impermissibly vague pursuant to Fed. R. Civ. P. 8, by improperly seeking to apply CIPA to extraterritorial conduct.

## I. Plaintiff Lacks Standing Because She Does Not Allege Concrete Harm

Pursuant to Fed. R. Civ. P. 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing requirements. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Here, Plaintiff, as the party seeking to invoke this Court's subject matter jurisdiction, has the burden of establishing that such jurisdiction exists. *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy the "irreducible constitutional minimum of standing," Plaintiff must establish an injury that is "concrete and particularized, and actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). In the context of statutory claims, there is no Article III standing absent a "plaintiff's suffering of concrete harm" as a result of "defendant's violation of" the statute. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2205 (2021). "Importantly, this Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* at 341. "[U]nder Article III, an injury in law is not an injury in fact." *Id*. Rather, a concrete injury is one that "must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); see also *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at *2-3 (S.D. Cal. Nov. 3, 2016). In the context of a CIPA complaint, complaints have been dismissed squarely on this basis. The court in *Heiting v. FKA Distrib. Co.* held that plaintiff lacked standing where she does not allege "what information she provided, what information defendant captures, whether she was aware of

Defendant's tracking practices, or if she has any reasons to believe that she was indeed de-anonymized. *Heiting*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025). The court in *Rodriguez v. Fountain9, Inc.*, found that an allegation of statutory damage alone was insufficient to survive a standing challenge. *Rodriguez,* 2024 WL 3886811, at *4 (Cal.Super. July 09, 2024). Standing was likewise lacking where plaintiff failed to allege specific information about her that was gathered, without which "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023); see also *Hughes v. Vivint, Inc.,* 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024) (where the particular information is not alleged, a harm to privacy cannot be established for standing purposes).

Here, no such concrete injury can ever exist. Plaintiff has not suffered any harm—physical, economic, or otherwise—resulting from her alleged use of Skullcandy's Website. Plaintiff baldly asserts that her "electronic communication" was intercepted and Skullcandy's "confidential communication" with her was eavesdropped upon. *See* Complaint, ¶¶ 146, 157. She fails to present any inference as to how such actions harmed her privacy interests, particularly in light of the fact that she admits to giving the same personally identifiable information to both Meta and Google and maintaining this third-party access for more than 17 years. *See* Complaint, ¶¶ 116-117.

For example, in *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023), the court granted the defense motion to dismiss for lack of standing because "the position that any violation of CIPA necessarily constitutes an injury in fact without the need for an additional showing of harm" is "at odds with" *TransUnion*. The plaintiff in *Byars* brought a claim for wiretapping and eavesdropping based on specific communications she had with a website chat

feature. *Id.* at *1. She did not allege that she disclosed sensitive information or *specific* personal information that would implicate a protectable privacy interest. *Id.* at *3. The court noted that eavesdropping on communications that "do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury." *Id.* (quoting *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022)). Even a plaintiff's bald allegations that her personal, private, and/or confidential information was eavesdropped on or wiretapped is not sufficient. *Id.* Disclosure of basic contact information, including email address, phone number, username, and other information "over which a party has [no] reasonable expectation of privacy does not amount to a concrete injury." *Id.*

Like the plaintiff in *Byars*, Plaintiff has not alleged ***what*** information was wiretapped, eavesdropped, or otherwise illegally obtained sufficient for this Court to find an actual injury to sustain standing. Plaintiff also fails to draw the line between Google's and Meta's technology and any identifiable injury. Plaintiff gives a detailed recounting of how a particular technology works between Google, Meta, and Skullcandy without specifically connecting the actions to Plaintiff's engagement on Skullcandy's website. *See* Complaint, ¶¶ 26-101. Then she broadly asserts that her consent was not the "requisite consent" before "allegedly intercepting and disclosing their communications" without identifying the actual information and communications that were intercepted or communicated. *See* Complaint, ¶ 102. She claims to have been harmed by not being able to opt out and by losing control over her personal information as a result of Skullcandy allegedly "disclosing her communications and PII to Google and Meta," "disclos[ing] her event data," and disclosing "unique identifiers." Complaint, ¶¶ 116-127. This lack of information about the particular information is not enough to find an actual injury.

*Massie v. General Motors, LLC*, No. 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) is also on point. There, plaintiffs claimed to have suffered an injury in their ability to control their personal information. *Id.* at *3. The court disagreed, finding that the personal information collected by the software was not "personal or private within the common law understanding of a privacy right." *Id.* Specifically, the court noted that browsing information and habits across multiple webpages did not give rise to a concrete injury. *Id.*

Plaintiff has not alleged and cannot allege that an injury in fact from Skullcandy's alleged actions. Such bald allegations of statutory violations are insufficient to confer standing.

## II. Plaintiff Has Failed to Allege Facts Sufficient to State a Claim Under California's Invasion of Privacy Laws

Dismissal under Rule 12(b)(6) is proper where there is either "a lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). A sufficient complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct., at 1949. The court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003).

### 1. Plaintiff's consent to Skullcandy's Terms of Service and Privacy Policy is a threshold matter that negates the applicability of both CIPA statutes.

Section 631(a) applies only to an "unauthorized" interception made "without the consent of all parties to the communication." *See also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954, 956 (N.D. Cal. 2017) (dismissing CIPA claim because plaintiffs' consent to policies disclosing the

"precise conduct at issue" barred their claims and no "further allegations could allow [them] to bring claims arising out of conduct which they consented to" (citations omitted), aff'd 745 F.App'x 8 (9th Cir. 2018).

The exact conduct of which Plaintiff complains was explicitly disclosed to her in Skullcandy's Privacy Policy as acknowledged in the Complaint. *See* Privacy Policy (Exhibit B), pp.2-3; *see also* Complaint, ¶¶ 103, 107-108 ("Skullcandy's Cookie Policy explains that cookies and similar technologies may be used to collect and share user data with third-party partners for analytics and advertising…"; noting that both Skullcandy's Terms and cookie policy, embedded in its Privacy Policy, are both located on the home screen "which a user would see upon entering its Website."). Plaintiff's consent defeats her claims, and her threadbare allegations of lack of consent (Complaint, ¶¶ 102-114) are not entitled to any weight. *See, e.g., Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). *See* Cal. Penal Code §§ 631, 632 (creating an exception to liability when a user consents). Plaintiff admits that "Skullcandy's Cookie Policy explains that cookies and similar technologies may be used to collect and share user data with third-party partners for analytics and advertising." Complaint, ¶ 103.

Plaintiff also admits that Skullcandy's Terms of Service and Privacy Policy are located on Skullcandy's homepage, "which a user would see upon entering [the] Website." Complaint, ¶¶ 106-108. Plaintiff then appears to read into the statute a more heightened standard of consent than what the statute requires. *See* Complaint, ¶¶ 103-106. Plaintiff complains that she was not clearly informed that such disclosures "might occur in real time," that her consent was not "distinct or conspicuous," and that the notice of consent was provided in "small font." *Id.* But this is not plausible in the real-world application of the internet, nor would any objective user think

otherwise.

Courts consistently hold that terms of service and privacy policies "can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims" at the motion to dismiss stage. *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (collecting cases under similar CIPA claims).

Plaintiff's consent to the Privacy Policy during her meaningful and purposeful engagement on Skullcandy's Website culminated in a purchase constitutes agreement to the Website's Terms and Privacy Policy, including to the use of website enhancement technology like the Google and Meta software (i.e., the Software). A contract entered on the internet is enforceable if it puts a website user on actual or inquiry notice of the site's terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). It is enough that "a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink"; if that exists, the plaintiff has agreed to "[a] binding contract." *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014); *Javier v. Assurance IQ, LLC* (*Javier I*), No. 4:20-CV-02860-JSW, 2021 WL 940319, at *3-4 (N.D. Cal. Mar. 9, 2021). Consent is a defense to CIPA claims and may be disposed of on a motion to dismiss. *Lakes v. Ubisoft, Inc.*, No. 24-CV-06943-TLT, 2025 WL 1036639, at *8 (N.D. Cal. Apr. 2, 2025)

The express disclosures throughout the Privacy Policy and the Terms of Service are sufficient to put a reasonable person, including Plaintiff, on notice that Skullcandy uses website enhancement technology, like the Software; that the data collected from this technology may be shared with third parties; and that the technology is used to promote site functionality and for marketing. *See* Exhibits A-B. Accordingly, Plaintiff's claims must be dismissed. *See, e.g., Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (dismissing a similar CIPA claim associated

with website enhancement technology where "[a] reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (taking judicial notice of "documents proffered by Defendants establish[ing] that in order to sign up for and use [the application], a user must agree to the [terms] and Privacy Policy" and dismissing CIPA claims despite plaintiff's conclusory allegation of lack of consent).

**2. Plaintiff's application of wiretapping to the Website contradicts CIPA's compliance provisions.**

Plaintiff's attempt to shoehorn the use of the Software into the definition of wiretapping that both conflates CIPA's compliance provisions and threatens to create absurd public policy outcomes.

California's wiretapping statute proscribes three distinct behaviors and "mutually independent patterns of conduct." *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (*quoting Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (Cal. 1978)). It also imposes liability "on anyone who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, permit, or cause to be done any of the acts or things mentioned above." *Id.* (*citing Swarts v. HomeDepot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023)). In order to state a claim under the "aiding and abetting" section of the wiretapping statute, Plaintiff must first allege a predicate violation under one of the three underlying wiretapping acts: (1) using an instrument or machine to make an unauthorized connection, (2) willfully attempting to learn the contents or meaning of a message while it is in transit without the parties' consent, or (3) using communication or information illegally gained. *Id.* (*quoting Yockey v. Salesforce*, 688 F. Supp. 962, 970 (N.D. Cal. 2023)).

The first does not apply to the internet, so it cannot support Plaintiff's claims. *Id. Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024). The third is contingent on finding that there was a violation of one of the first two. *Id.* (*citing In re Google Assistant Priv. Litig*., 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) (dismissing aiding-and-abetting claim under the third clause because "Plaintiffs must establish that the information at issue…was obtained through a violation of the first or second clauses.")). Accordingly, Plaintiff must find an underlying violation of the second clause, which required the alleged eavesdropping to occur "while the [communication] is in transit." Cal. Penal Code § 631(a). "'***While***' is the key word here." *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D.Cal., 2025) (emphasis added) (*quoting Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023)). Dismissal is appropriate where the timeline of automatic recording and transcription is unclear. *Id.* (*quoting Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023)).

The relevant analysis is whether the third party eavesdropper attempted to decipher the information during transit, not later.[1] *See James v. Allstate Ins. Co*., No. 23-CV-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) ("Plaintiff's allegation that ... 'data is stored or can be accessed by [Defendant]' is insufficient to support a plausible inference [Defendant] attempted to read or learn the contents of the communication while in transit."). A recent Ninth Circuit ruling found that a district court did not err when it dismissed a claim under the same statute because "'intercept' has a 'narrow definition' and that for a communication to be intercepted in violation of this statute, 'it must be acquired during transmission, not wit it is in electronic storage.'" *Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (*quoting Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002)). Dismissal is also proper

[1] *Valerie Torres & Rhonda Hyman v. Prudential Financial, Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025).

when the plaintiff fails to allege the relevant information was acquired in transit. *Id.*

Here, Plaintiff fails to state a claim indicating broadly what communication and/or information Meta and Google is said to have intercepted. This, alone, is insufficient to survive a motion to dismiss. Additionally, Plaintiff must also allege that the third-party interceptor both attempted to read and learn the contents of the communication and that it happened ***while in transit***—not later. Plaintiff does not make these allegations (and to do so would constitute a sham) and, therefore, her claim under Section 631(a) cannot survive.

**3. Plaintiff's application of eavesdropping to the Website contradicts CIPA's compliance provisions and threatens public policy.**

A party to a communication cannot eavesdrop on itself.[2] Yet, Plaintiff alleges that a third party eavesdropped on confidential communication between herself and Skullcandy, thereby making Skullcandy liable. Complaint, ¶ 157. In reciting the bare elements of California Penal Code § 632(a), Plaintiff, for the first time, characterizes her communication as confidential to satisfy the pleading requirement. But to constitute a confidential communication under the statute, a party must have "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024). "Internet communications do not have an objectively reasonable expectation of confidentiality, especially if those communications can be easily shared by ***recipients*** of the communications." *Yoon v. Meta Platforms, Inc.*, No. 24-CV-02612-NC, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024) (emphasis added) (*citing Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)). A complaint must allege "something unique about these particular internet communications" to justify why they are considered confidential. *Id.* (*quoting In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799).

[2] *See id.* at *2.

Plaintiff makes a single allegation that the communication intercepted by Google and Meta is confidential, ostensibly to comport with the statute's requirement. However, Plaintiff fails to identify the specific communication that was intercepted and what made it confidential. To the contrary, Plaintiff admits to having a three plus year relationship with Google and a more than decadeslong relationship with Meta (through Facebook) where she provided some of the exact same personally identifiable information that she now claims is confidential. Complaint, ¶¶ 116-118. In short, Plaintiff's bald assertion that her communication with Skullcandy was confidential is controverted by the evidence and, therefore, her California Penal Code § 632 claim is ripe for dismissal.

**III. The CIPA Claim is Impermissibly Vague**

Plaintiff's CIPA claim fails by being impermissibly vague. Plaintiff's failure to allege that Skullcandy's challenged conduct occurred in California violates the presumption against extra-territorial application of California law.

Rule 8, Fed. R. Civ. P., requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 545. To satisfy the federal pleading standards, Plaintiff needed to identify "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

Plaintiff's CIPA claim fails because they do not apply to extraterritorial conduct. Nothing in CIPA displaces the "strong presumption against the extra-territorial application of California law." *Brackett v. Am. Airlines Grp. Inc.*, No. 21-cv-02681-HSG, 2022 WL 282529, at *2 (N.D. Cal. Jan. 31, 2022) (*citing Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011)). Indeed, CIPA's

intent is "to protect the right of privacy of the people of *this* state." Cal. Penal Code § 630 (emphasis added). Had the California legislature intended to provide for CIPA's extraterritorial application, it would have done so expressly. It did not. As such, Section 630's plain language must be given effect. It is axiomatic that courts applying California law must "presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan,* 51 Cal. 4th at 1207 (internal quotation marks omitted; emphasis added).

Plaintiff fails to state a CIPA claim because she does not factually allege that the activity took place in California. Although Plaintiff alleges that she resides in California and limits her subclass for the CIPA claim to "persons within California," Plaintiff fails to allege that any data was captured in California. *See* Complaint, ¶¶ 116-124, *but see Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing plaintiff's CIPA claim because plaintiffs "fail to allege that the data in question was intercepted in California, as is required under the CIPA"). Plaintiff alleges Skullcandy disclosed communication and other information to Google and Meta. *See* Complaint, ¶ 121. However, she admits that Skullcandy maintains its principal place of business in Utah and "a substantial portion of the events, acts, and omissions giving rise to Plaintiff's claims" occurred ***in*** Utah. *See* Complaint, ¶¶ 14-15. Because Plaintiff fails to allege that Skullcandy's challenged conduct occurred in California, Plaintiff's CIPA claims should be dismissed.

**CONCLUSION**

For the foregoing reasons, Skullcandy respectfully requests that this Court grant Skullcandy's Motion to Dismiss and dismiss the Complaint with prejudice.

DATED this ___ day of April, 2025.

Respectfully Submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/* ________________________________
Mark A. Nickel
Sara E. Pendleton

*Attorneys for Defendant Skullcandy, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April ___, 2025, a copy of the foregoing **MOTION TO DISMISS** was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

*/s/* ______________________________